UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMEKA H,[1] ex. rel. C.M., a minor,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 18 C 3419<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tameka H. filed this action on behalf of her son, C.M., seeking reversal of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision with an award of benefits or in the alternative, reversal and remand for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

On September 18, 2014, Tameka H. filed an application for SSI on behalf of her minor child, C.M., who was born on November 8, 2013, alleging that he became

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

disabled on November 8, 2013. (R. at 63). The application was denied initially and upon reconsideration, after which Ms. H. filed a timely request for a hearing. (*Id.* at 63, 75, 90). On March 20, 2015, Ms. H., represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 35–53).

On July 29, 2015, the ALJ denied C.M.'s request for benefits. (R. at 15–29). Applying the three-step sequential evaluation process, the ALJ found at step one that C.M. had not engaged in substantial gainful activity since September 18, 2014, the application date. (*Id.* at 18). At step two, the ALJ found that C.M. had the following severe impairments: speech and language delay. (*Id.*) At step three, the ALJ determined that C.M. does not have an impairment or combination of impairments that meet or medically equal the severity of any of the Listings. (*Id.*). The ALJ then determined that C.M. does not have an impairment or combination of impairments that functionally equal the severity of any of the Listings. (*Id.* at 19). In making this determination, the ALJ found that C.M. had a marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks, interacting and relating to others, health and physical well-being; and no limitations in moving and manipulating objects and caring for himself. (*Id.* at 19–28).

The Appeals Council denied C.M.'s request for review on March 10, 2018. (R. at 1). C.M. now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A Court reviewing the Commissioner's final decision may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). It "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The ALJ's decision must be explained "with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "[T]he ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

"A child qualifies as disabled and therefore may be eligible for SSI if he has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' and the impairment 'has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). To decide whether a child meets this definition, the Social Security Administration (SSA) employs a three-step analysis. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings contained in 20 CFR pt. 404, subpt. P, app. 1. *Id.* To find an impairment functionally equivalent to one in the Listings, an ALJ must analyze its severity in six age-appropriate categories: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being." *Id.* § 416.926a(b)(1). To functionally equal the Listings, the ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. An "extreme" limitation occurs when the impairment interferes very seriously with the child's ability to independently initiate, sustain or complete activities. *Id.* § 416.926a(e)(3)(i). A "marked" limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i).

## III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's arguments that the ALJ failed to sufficiently explain and provide adequate support for her finding that C.M. had less than marked limitations in interacting and relating with others.[2]

The interacting and relating to others domain considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Older infants and toddlers age one to three, like C.M., are dependent upon caregivers, but should begin to separate from them. 20 C.F.R. § 416.926a(i)(2)(ii). They should "be able to express emotions and respond to the feelings of others . . . begin initiating and maintaining interactions with adults, but also show interest in, then play alongside, and eventually interact with other children [their] age." *Id*. Moreover, children age one to three should "be able to spontaneously communicate [their] wishes or needs, first by using gestures, and eventually by speaking words clearly enough that people who know [them] can understand what [they] say most of the time." *Id*. "The regulations do not require a complete impairment, only serious interference, to qualify as a marked limitation." *Hopgood ex rel. L.G.,* 578 F.3d at 703 (citing 20 C.F.R. § 416.926a(e)(2)(i)).

---

[2] Because the Court is remanding on this issue, it does not address Plaintiff's other arguments.

Considering the evidence in this case, the ALJ did not sufficiently explain why she found that C.M. had less than marked limitations in interacting and relating to others. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("We have repeatedly held that an ALJ must provide a logical bridge between the evidence in the record and her conclusion."). It is not clear to the Court how the evidence favorable to C.M. regarding interacting and relating to others was overcome by the other evidence relied on by the ALJ. *See Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("[I]t is unclear what evidence the ALJ relied upon in finding that [the child] was not markedly limited in this domain. We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies."); *see also Hopgood ex rel. L.G.*, 578 F.3d at 700 (finding ALJ's analysis deficient where he "failed to explain why he did not credit portions of the record that were favorable to L.G.").

In determining that Plaintiff has less than marked limitations in interacting and relating with others, the ALJ explained:

> In June 2014, the claimant was assessed with a 28 percent delay in socio-emotional development and a 14 percent delay in expressive language. However, at his twelve-month check-up in November 2014, the claimant was noted to have a "wonderful" relationship with his siblings. At about that same time, his mother reported that the claimant cuddled when held, smiled at faces he knew, would turn his head when his name was called, would watch the face of a person speaking to him, and played games such as "peek-a-boo." The claimant in March 2015 was assessed with mild receptive and expressive language delays. However, his voice, fluency, speech sound development, and pragmatic language skills appeared to be within normal limits. In August 2016, the claimant underwent a pediatric behavioral and developmental assessment, at which he was "socially engaging with others using gestures, eye contact, and facial expressions." He "initiated triadic gaze to establish joint attention

> and he responded to joint attention." He spontaneously engaged in reciprocal play.

(R. at 25) (citations omitted). Absent from this assessment is any discussion of numerous findings that could support a more marked limitation in interacting and relating with others. For instance, the ALJ failed to discuss C.M.'s difficulties with tantrums, hitting, biting, and kicking. His mother testified to C.M.'s throwing, biting, banging his head on the wall, and pushing children in school. (R. at 42–43, 47). A speech and language evaluation for the Department of Disability Services in March 2015 described parental concerns with C.M.'s fighting and hitting behaviors. (*Id*. at 420). An August 2016 University of Chicago Illinois Early Intervention Medical Diagnostic Evaluation indicated that C.M. has tantrums and will hit, bite and kick other children. (*Id*. at 482). And both a Chicago Public School's Report of Psychological Initial Evaluation and an Individual Education Program (IEP)[3] from October 2016 noted yelling, hitting, and kicking behaviors as well as tantrums and banging his head on the ground. (*Id*. at 493, 508). Nor did the ALJ address findings from the August 2016 University of Chicago evaluation that (1) specified a diagnosis of "Global Developmental Delay" based in part on test results noting that C.M. had a 27–45 percent delay in social/ emotional development; and (2) recommended that C.M. have "behavioral therapy to address self-regulation and behavioral concerns." (*Id*. at 481, 489). The ALJ erred by failing to "confront the evidence that does not

---

[3] C.M. was referred for an initial evaluation and IEP with the Chicago Public Schools when he was 2 years, 11 months old because he was about to exit the Early Intervention for Developmental Therapy, Speech and Language Therapy, Occupational Therapy and Physical Therapy program.

support [her] conclusion and explain why it was rejected." *Indoranto*, 374 F.3d at 474; *see also Hopgood ex rel. L.G.* 578 F.3d at 697 (remanding where the ALJ "made conclusory statements that contradicted the evidence presented and failed to address portions of medical and school records that were favorable to [the child].").

The ALJ's assessment of C.M.'s speech and language development as it applies to this domain is similarly flawed. Even though the ALJ acknowledged that "[b]ecause communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the langue of their community," (R. at 24) (*citing* 20 C.F.R. § 416.926a(i) and SSR 09-5p), the ALJ failed to address contrary evidence. For instance, the ALJ did not address C.M.'s August 2016 University of Chicago evaluation finding that C.M. has difficulty: "comprehending directions beyond simple one-step directions," "comprehending basic concepts," "follow[ing] age-appropriate directions," and "participat[ing] in conversation at an age-appropriate level." (*Id.* at 487–88). Nor did the ALJ address testing results in this evaluation revealing a 37 percent delay in language comprehension and a 19 percent delay in language expression (*Id.* at 480–81).

Defendant argues that the ALJ did not need to discuss evidence of Plaintiff's "difficulties comprehending directions" in this domain because she accounted for those difficulties when finding that C.M. had a marked impairment in the "acquiring and using information" domain. (Dkt.28 at 9). This argument is without traction. Pursuant to the social security regulations, "any given impairment may have effects

in more than one domain; therefore, we will evaluate the limitations from your impairments in any affected domain(s)." 20 C.F.R. § 416.926a(c); *see also* SSR 09-3p 2009 WL 396025, at *4 ("Rating the limitations caused by a child's impairment(s) in each and every domain that is affected is not 'double-weighing' of either the impairment(s) or its effects. Rather, it recognizes the particular effects of the child's impairment(s) in all domains involved in the child's limited activities."); *see also Coleman ex rel. J.C. v. Colvin*, 981 F. Supp. 2d 749, 763 (N.D. Ill. 2013) (finding the ALJ erred by failing to address the extent of claimant's speech and language delays in her analysis of the interacting and relating to others domain.).

Defendant's argument that the ALJ did not need to address contrary evidence because she properly relied on the opinions of state agency consultants, (Dkt. 28 at 8–9), also fails. As an initial matter, the ALJ did not address the state agency's findings in her discussion of the interacting and relating to others domain; therefore, Defendant's argument is an impermissible *post hoc* rationalization that cannot be considered by this Court. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("[T]he ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)); *Kastner*, 697 F.3d at 648 ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace"); *Scott v. Astrue,* 647 F.3d 734, 739 (7th Cir. 2011) ("We confine our review to the rationale offered by the ALJ"); *Larson v. Astrue*, 615, F.3d 744, 749 (7th Cir. 2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here"). More

significantly, the state agency reviewers completed their evaluations in 2015 and did not have access to the August 2016 University of Chicago testing and evaluation. The determinations of the agency consultants reasonably could have changed if they had considered the more recent evaluation and testing results. *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.").

For the reasons stated, the Court concludes that the ALJ's determination that C.M. had less than marked restrictions in the domain of interacting and relating to others was not supported by substantial evidence. *See Hopgood ex rel. L.G.*, 578 F.3d at 703 (finding reversible error when the ALJ "failed to explain why he disregarded [ ] pertinent evidence" when determining that claimant had less than marked limitations in the interacting and relating to others domain). This is not harmless error as a "marked" limitation in two categories would amount to a finding of functional equivalence. 20 C.F.R. § § 416.926a(e)(3). On remand, the ALJ shall reevaluate C.M.'s limitations, in all six domains, in accordance with this opinion, considering all of the evidence and testimony in the record, and shall explain the basis for her findings in accordance with applicable regulations and rulings.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [20] is **GRANTED**. Defendant's Motion for Summary Judgment [27] is **DENIED**. Pursuant

to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: April 5, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge